George T. Holmes, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 20, 1981, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*R. Michael Owens,* for petitioner.

*William Kennedy,* Associate Counsel, with him *Richard Wagner,* Chief Counsel, *Robert F. Skwaryk,* Associate Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE ROGERS, December 14, 1981:

We have before us for review an order of the Unemployment Compensation Board of Review denying the claim for benefits of George T. Holmes, a former sanitation worker for the City of Philadelphia, on the ground that Mr. Holmes was discharged from his position of employment on account of his willful misconduct within the meaning of Section 402(e) of the Unemployment Compensation Law.[1]

Following a hearing attended by the claimant and his wife and Mr. James W. Sinclair, Personnel Investigation Supervisor for the City's Streets Department, a referee found that Mr. Holmes had been discharged on March 10, 1980 for failing on numerous occasions both to report for duty and to notify his employer of the impending absence, offenses for which he had been previously reprimanded and disciplined, including a total of seven days of suspension in 1978 and 1979. The referee further found that the claimant was absent from work without proper and required notification on twenty-five occasions in 1979 and that, on two specified dates in January, 1980, the claimant ceased in the performance of his duties before the end of his shift and without the permission of his superiors. The Board affirmed this determination and this appeal followed.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

The claimant does not here seriously contest the factual findings recounted above[2] but argues in mitigation that he has long suffered from episodes of heart palpitations which require him to be frequently absent from work and, if the onset of such an episode occurs during working hours, to suddenly leave his post. No medical evidence was adduced in support of this contention. Moreover, on the issue of the claimant's failure to report his illness in the manner required by employer rule, the claimant testified not that his physical condition prevented such notification but somewhat inconsistently both that he had reported his absences and that he had diligently attempted to report them but had been unable to do so.

[2] In his brief the claimant argues that only hearsay evidence, in the form of documentary exhibits of the employer, supports the referee's finding with respect to the two incidents in January, 1980. The claimant's own testimony with respect to these incidents is revealing. Initially the claimant testified that he had not been absent on the dates in question. Later he conceded the absences but asserted that he had given prior notification to his supervisor, a Mr. Davenport. Still later in his testimony the claimant conceded that his supervisor had not been notified due to the rapid onset of his physical symptoms but that notification by telephone had been given to a city employee with the given name of Janice. When some doubt was cast on whether Janice's tenure of employment encompassed the date at issue, the claimant retreated from his most recent position and testified that a Mr. Nixon had instead been notified of the absence by telephone. Finally, the claimant conceded that he did not specifically recall whether notification had been given on these occasions but that, as he had previously testified, it was his general practice to attempt, although frequently without success, to give such notification to his employer.

We need not decide whether the records of the employer, which were not objected to at the hearing, alone or in combination with the claimant's testimony just summarized, adequately supports the referee's finding that the claimant was absent without proper notification on the dates specified. It is clear that the claimant was discharged on account of his unacceptable attendance record as a whole, the referee so found and this finding is adequately supported by the evidence.

The applicable legal principles were recently stated in *Gochenauer v. Unemployment Compensation Board of Review*, 59 Pa. Commonwealth Ct. 354, 356, 429 A.2d 1246, 1248 (1981):

We have held repeatedly that while absenteeism due to illness does not generally constitute willful misconduct, a failure to report an illness in the manner required by company rules, particularly after receiving a warning, does constitute wilful misconduct. Patrick v. Unemployment Compensation Board of Review, 41 Pa. Cmwlth. 238, 398 A.2d 1095 (1979) and Ralston v. Unemployment Compensation Board of Review, 18 Pa. Cmwlth. 378, 336 A.2d 654 (1975). The question of whether notice was given to the employer is one of fact, while the sufficiency of the notice is a matter of law. Unemployment Compensation Board of Review v. Blouse, 23 Pa. Cmwlth. 66, 350 A.2d 220 (1976).

The referee, affirmed by the Board, resolved the factual issue of notification against the claimant and this finding is adequately supported by the claimant's own testimony:

Q. I understand that. With respect to the 24½ days in which you were out AWOL, regardless of whether it was due to illness or not, is there any particular reason why you couldn't call the department to indicate that you would not be in?

A: Well, I think that you can take that even right this minute. You can call any part of the area, any part of the area, except for Roxborough, if you call anytime up to 9:00, and a lot of times, you can't get MU6-1776, you can't get it. And if you call anytime up to that, anytime to 9:00, you get a AWOL day. That's whole (inaudible). That's the only one. You can call

South Philly, North Philly, you go anywhere, and that's all, on the job. Now, they bring it down to 8:00 in the morning.

. . . .

Q: All right, who warned you about calling in after 9:00?

A: Oh, the whole thing. Everybody, anybody you call in there. Anybody you call. Anybody, you now, the secretary, the supervisor, anyone.

Q: All right, then why did you call in after 9:00, after you were warned?

A: Because I called, I called like, some mornings I call up at 5:00, and they say, now you can have, you can check that out. You can call right now, and they take a long time. And sometimes (inaudible) 5 minutes after 9:00.

Q: What do you mean, it takes a long time. A long time for what?

A: A long time for them to answer.

Q: A long time for them to answer?

A: Yes sir.

Q: Well, do you mean the phone would ring about four times?

A: No, the phone wouldn't, the phone wouldn't ring. The phone would ring and ring, and he say, well, I hang up, and I wait a few more minutes, all the time you looking at the clock.

Q: You mean the phone would ring, and there would be no answer?

A: Nothing, no answer at all.

Q: No answer?

A: Nothing, no answer.

Q: You mean, you called before 9:00, and you couldn't get an answer on the phone, and

then you called after 9:00, you were told you called in late, and you were AWOL?

A: Yea, and most times it was about 5 minutes or 10 minutes after work. And I got a phone in the house, and I would call early.

The referee was not required to believe the claimant's self-serving albeit unrebutted testimony that he was consistently unable to complete his required call to the employer or was able to do so only after the notification deadline.

Order affirmed.

ORDER

AND Now, this 14th day of December, 1981, the order of the Unemployment Compensation Board of Review is affirmed.